# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EMMETT T SIMMONS, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:21-cv-01442-ACA |
| NAPA TRANSPORTATION, INC., et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

While driving a tractor-trailer for Defendant NAPA Transportation, Inc., Defendant Dan Allen Thompson ran a red light and hit Plaintiff Emmett Simmons. Mr. Simmons has filed suit against NAPA and Mr. Thompson, asserting claims of: (1) negligence or wantonness against Mr. Thompson ("Count One"); (2) negligent or wanton hiring, training, and supervision against NAPA ("Count Two"); (3) negligent or wanton entrustment against NAPA ("Count Three"); and (4) negligent or wanton maintenance against NAPA and Mr. Thompson ("Count Four"). (Doc. 1-2 at 12–15). NAPA and Mr. Thompson concede that Mr. Thompson was negligent, but they seek summary judgment on the remaining claims. (Doc. 11). Because Mr. Simmons has not presented evidence creating a genuine dispute of material fact about any of the challenged claims, the court **WILL GRANT** the

motion for partial summary judgment and **WILL ENTER SUMMARY JUDGMENT** in Defendants' favor and against Mr. Simmons on the part of Count One asserting wantonness and on all of Counts Two, Three, and Four.

## I. BACKGROUND

In deciding a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

On January 6, 2021, Mr. Simmons stopped his car at a red light and waited for his turn to drive through an intersection. (Doc. 11-2 at 15). When the light turned green, he entered the intersection and was immediately hit by a tractor-trailer driven by Mr. Thompson on behalf of NAPA. (*Id.*; doc. 1-2 at 9 ¶ 6; doc. 2 at 2 ¶ 6; *see also* doc. 11-5 at 20 (hereinafter "Pl. Exh. 7")).

NAPA's truck, which Mr. Thompson was driving, had a dash cam recording both the driver and the view in front of the truck. (Pl. Exh. 7). The dash cam video shows Mr. Thompson driving at forty-two miles per hour (he testified he "[thought he] was told [the speed limit] was forty" (doc. 11-4 at 19)) as he approached the intersection. (Pl. Exh. 7). As he drove toward the intersection, he looked away from the road for about three seconds while slowing to thirty-eight miles per hour. (*Id.* at 0:03–0:06). When Mr. Thompson looked back toward the road, Mr. Simmons had

started pulling into the intersection. (*Id.*). About two seconds later, Mr. Thompson hit Mr. Simmons at thirty-seven miles per hour. (*Id.* at 00:06–00:08). Most of the video is too grainy to see the color of the light, but it is clear that when Mr. Thompson entered the intersection, he had a red light. (Pl. Exh. 7). In addition, the video shows another vehicle traveling in the opposition direction to Mr. Thompson stopping at the light about five seconds before the collision—just as Mr. Thompson was looking away from the road. (*Id.* at 00:04–00:05). Mr. Thompson testified that his light "was green just prior to getting to that intersection." (Doc. 11-4 at 19).

Neither Mr. Thompson nor NAPA denies that Mr. Thompson was at fault in this accident. (*See* doc. 1 at 9 ¶ 6; doc. 2 at 2 ¶ 6). But they dispute whether Mr. Thompson acted wantonly and whether NAPA acted negligently or wantonly in hiring, supervising, training, and entrusting the truck to him. Determination of those issues requires a review of Mr. Thompson's driving history.

Mr. Thompson has been a truck driver on and off since the late 1970s. (Doc. 11-4 at 25). In 1998—over two decades before the accident at issue in this case—he was involved in a very serious trucking accident that he was told was not his fault. (Doc. 11-4 at 5–6, 8). The 1998 accident caused Mr. Thompson brain damage that resulted in significant memory problems. (*Id.* at 5, 8). But no doctor has ever told Mr. Thompson he should not drive a tractor-trailer. (*Id.* at 25–26).

Mr. Thompson was unable to work for five years after that accident, but in 2003 he began driving a truck professionally for short distances, typically around three to ten miles per trip. (Doc. 11-4 at 7, 24). He continued doing commercial short-distance driving until 2020. (*Id.* at 23–25; doc. 11-8 at 3). In December 2020, NAPA hired Mr. Thompson as a commercial interstate truck driver. (Doc. 11-8 at 3 ¶ 6). Before hiring him, NAPA reviewed Mr. Thompson's driving history for the previous seven years and found no accidents, citations, or license suspensions or revocations. (Doc. 11-8 at 4 ¶ 10; doc. 11-4 at 15). NAPA also required him to take a road test, complete a safety course, and obtain a valid medical examiner certificate certifying that he was physically qualified to drive commercial motor vehicles.[1] (Doc. 11-8 at 4 ¶¶ 10–11; doc. 11-4 at 13; Doc. 11-6 at 10–11); *see* 49 C.F.R. § 391.41(b). NAPA's director of safety, Joseph Salisbury—who was hired after the accident with Mr. Simmons occurred—testified that if a driver has a medical examiner certificate, NAPA does no further investigation into the driver's ability to operate commercial vehicles. (Doc. 11-6 at 3, 6).

Mr. Thompson testified that NAPA required him to "go over their policies," but when asked if his head injuries would make him forget those policies, he said he did not know. (Doc. 11-4 at 13). He also testified that he disclosed his 1998 accident

---

[1] Neither party has submitted the medical examiner's certificate.

to NAPA, but he could not remember if he disclosed his ongoing memory problems. (*Id.* at 13–14).

The accident in this case occurred seventeen days after NAPA hired Mr. Thompson. (*See* doc. 11-8 at 3 ¶ 6; doc. 11-2 at 14). Because of Mr. Thompson's memory problems, he remembers very little about the circumstances surrounding the accident, including the date of the accident, how long he had been driving that day, where he was driving from, and where he was driving to. (Doc. 11-4 at 12–13, 16–23). The only thing he clearly remembers is that seeing a green light before getting to the intersection. (*Id.* at 19).

Mr. Salisbury attended Mr. Thompson's deposition. (*See* doc. 11-6 at 6). Having watched Mr. Thompson's testimony, Mr. Salisbury testified that he would have been "concerned" about hiring Mr. Thompson to drive tractor-trailers. (*Id.*).

## II.   DISCUSSION

NAPA and Mr. Thompson seek summary judgment on all claims except the claim of negligence against Mr. Thompson. (Doc. 11 at 1). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted).

### 1. Count One (Wantonness)

Count One asserts claims of wantonness and negligence against Mr. Thompson. (Doc. 1-2 at 12–13). Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007); *see* Ala. Code § 6-11-20(b)(3) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."). This stands in contrast to negligence, which "is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care." *Essary*, 992 So. 2d at 9 (quotation marks omitted).

Mr. Thompson concedes that he was negligent (*see* doc. 2 at 3 ¶ 10), but seeks summary judgment on the claim of wantonness (doc. 11 at 1). He contends that he did not mean to run the red light and glanced away from the road for only a moment. (Doc. 12 at 24–27). And he argues that his memory problems do not interfere with his ability to operate a truck safely. (*Id.* at 14–15). Mr. Simmons does not argue that Mr. Thompson behaved wantonly by glancing away from the road or by running the red light; he contends instead that Mr. Thompson's memory loss makes driving a commercial vehicle unsafe such that a jury could find he acted with reckless disregard of the safety of others. (*See* doc. 14 at 3–10).

Mr. Simmons has not presented any evidence from which a reasonable jury could find that Mr. Thompson acted wantonly by driving a tractor-trailer despite his memory problems. After his accident in 1998, Mr. Thompson began driving trucks commercially again in 2003. (Doc. 11-4 at 7, 24). Since that time, he has not been in any accidents or had any driving-related citations. (Doc. 11-8 at 4 ¶ 10; doc. 11-4 at 15). No doctor has opined that his memory problems prevent him from driving (doc. 11-4 at 25–26), and to the contrary he has a medical examiner's certificate opining that he is physically qualified to drive commercial motor vehicles (doc. 11-8 at 4 ¶ 11). In short, there is no evidence that Mr. Thompson's memory problems interfered with his ability to drive such that he consciously disregarded the rights or safety or others. *See* Ala. Code § 6-11-20(b)(3); *Essary*, 992 So. 2d at 9. As a result, the court **WILL GRANT** Defendants' motion for summary judgment on the claim of wantonness asserted against Mr. Thompson.

> 2. Count Two (Negligent or Wanton Hiring, Training, and Supervision) and Count Three (Negligent or Wanton Entrustment)

Count Two asserts that NAPA negligently or wantonly hired, trained, and supervised Mr. Thompson, and Count Three asserts that NAPA negligently or wantonly entrusted the truck to Mr. Thompson. (Doc. 1-2 at 13–14). Although these are distinct claims, they have some common elements. All require the plaintiff to establish that the employee was incompetent to drive and that the employer either knew or should have known of the employee's incompetence. *See Jones Exp., Inc.*

7

*v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) (negligent or wanton hiring, training, and supervision); *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005) (negligent entrustment); *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985) (wanton entrustment).

NAPA contends that Mr. Simmons has not presented evidence of Mr. Thompson's incompetence to drive or of NAPA's actual or constructive knowledge of any incompetence on Mr. Thompson's part. (Doc. 12 at 11–20, 30–32). Mr. Simmons responds that Mr. Thompson's memory problems made him incompetent to drive and that NAPA was aware of his incompetence because Mr. Thompson disclosed the 1998 accident to NAPA. (Doc. 14 at 10–11, 16–17).

As discussed above, although it is undisputed that Mr. Thompson has serious memory problems, there is no evidence that his memory problems affect his ability to drive safely. *See supra* at 7. As a result, Mr. Simmons has not presented evidence from which a reasonable jury could find that Mr. Thompson was incompetent to drive, and the claims of negligent or wanton hiring, training, supervision, and entrustment must fail.

But even if there were evidence of Mr. Thompson's incompetence to drive, there is no evidence that NAPA had actual or constructive knowledge of his incompetence. Although Mr. Thompson testified that he disclosed his 1998 accident, he could not remember if he disclosed his ongoing memory problems. (Doc. 11-4 at

8

13–14). And he obtained and gave NAPA a medical examiner certificate that he was physically able to drive commercial vehicles. (Doc. 11-8 at 4 ¶ 11). Finally, NAPA reviewed his driving history in the preceding seven years and found that he had no citations, license suspensions, or license revocations. (*Id.* at 4 ¶ 10). In short, NAPA had no reason to know or suspect that Mr. Thompson was incompetent to drive. Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Counts Two and Three.

### 3.  Count Four (Negligent/Wanton Maintenance)

Count Four asserts that NAPA and Mr. Thompson negligently and wantonly maintained the truck. (Doc. 1-2 at 15). NAPA and Mr. Thompson seek summary judgment on this court because the only evidence in the record is that the truck was in good working order. (Doc. 12 at 27–28). Mr. Simmons does not make any arguments about this count. (*See generally* doc. 14). And the only evidence in the record about the maintenance of the truck is Mr. Salisbury's affidavit attesting that the truck had not been "improperly maintained, repaired, or serviced" and was not "defective in any way." (Doc. 11-8 at 5 ¶ 15). Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Count Four.

### III.  CONCLUSION

The court **WILL GRANT** the motion for partial summary judgment and **WILL ENTER SUMMARY JUDGMENT** in Defendants' favor and against

Mr. Simmons on the part of Count One asserting wantonness and on all of Counts Two, Three, and Four. The part of Count One asserting negligence against Mr. Thompson will proceed.

The court will enter a separate partial summary judgment consistent with this opinion.

**DONE** and **ORDERED** this March 28, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE